FILED
2017 Nov-30  AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CRAIG D. LAWRENCE, SR., Ph.D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE BOARD OF TRUSTEES OF** | ) | **CIVIL ACTION NO:** |
| **LAWSON STATE COMMUNITY** | ) | **2:16-CV-01885-AKK** |
| **COLLEGE; DR. PERRY W. WARD,** | ) | |
| **President, in his official and individual** | ) | |
| **capacities; and SHARON CREWS, vice** | ) | |
| **President for Administrative Services, in** | ) | |
| **her official and individual capacities;** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

David M. O'Brien (OBR002)
Alabama Community College System
P. O. Box 302130
Montgomery, AL  36130-2130
E-mail:  david.obrien@accs.edu
Telephone:  (334) 293-4604
Facsimile:   (334) 293-46

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................ ii

TABLE OF AUTHORITIES ...................................................... iii

STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................... 1

ADDITIONAL FACTS IN SUPPORT OF SUMMARY JUDGMENT .................. 8

STANDARD FOR SUMMARY JUDGMENT ......................................... 9

I.  PLAINTIFF'S §1981 VIA § 1983 CLAIMS AGAINST LAWSON STATE ARE BARRED AS A MATTER OF LAW ............................................ 11

II. PLAINTIFF'S FAILURE TO PROMOTE CLAIM .......................... 11

III. RETALIATION CLAIMS ................................................ 15

IV. TITLE VII RACE AND GENDER DISCRIMINATION ............... 17

V.  HOSTILE WORK ENVIRONMENT CLAIMS ............................ 19

VI. AGE DISCRIMINATION IN EMPLOYMENT ACT CLAIMS ............. 29

CONCLUSION ................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Austal, U.S.A., LLC*, 745 F. 3d 1240, 1248 (11th Cir. 2014) ..... 19, 20, 28

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142
(1970) ...................................................................................................10

*Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct.  357, 57 L.Ed. 2d 1114 (1978).....11

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d
202 (1986) ............................................................................................10

*Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ……...10

*Brown v. Alabama Department of Transportation*, 597 F. 3d 1160, 1174 (11th Cir.
2010) ....................................................................................................12

*Burlington Northern and Santa Fe Railroad Company v. White*, 548 U.S. 53, 68,
126 S. Ct. 2405, 2415, 165 L.Ed. 2d 345 (2006)..................................................15

*Butler v. Alabama Department of Transportation*, 536 F. 3d 1209, 1212 – 13(11th
Cir. 2008) ..............................................................................................15

*Butts v. County of Volusia* 222 F. 3d. 891, 894 (11th Cir. 2000) *Adams v. Austal,*
*U.S.A., LLC*, 745 F. 3d 1240, 1248 (11th Cir. 2014) ...........................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265
(1986)................................................................................................ 9, 10

*Chandler v. Volunteers of America, Southeast, Inc.,* 126 F.Supp.3d 1216 (N.D.
Ala. 2015) ......................................................................................... 11, 28

*Cotton v. Cracker Barrel Old Country Store*, *Inc*., 434 F. 3d 1227, 1234 (11th Cir.
2006) ....................................................................................................18

*Davis v. Town of Lake Park, Florida*, 245 F. 3d 1232, 1239 (11th Cir. 2001) .......18

*Edwards v. National Vision, Inc*., 568 Fed. Appx. 854, 862 (11th Cir. 2014) . 12, 16

*Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) ..........................................10

*Ezell v. Wynne*, 802 F. 3d 1217, 1226 (11th Cir. 2015)............................................18

*Flowers v. Troup County, Georgia, School District*, 803 F.3d 1327, 1336 (11th Cir. 2015) ...................................................................................... 13, 18

*Hall v. Siemens VDO Automotive,* 481 Fed.Appx. 499, 504-5 (11th Cir. 2012)......17

*Haugabrook v. Cason*, 518 Fed. Appx. 803, (11th Cir. 2013) ................................14

*Holland v. Gee*, 677 F. 3d 1047, 1056 (11th Cir. 2012)..........................................18

*Jones v. UPS Ground Freight*, 683 F. 3d 1283, 1297 (11th Cir. 2012)....................28

*Kimel v. Florida Board of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640, 145 L.Ed. 2d 542 (2000)........................................................................................29

*Marable v. Marion Military Institute*, 595 Fed. Appx. 921, 926 (11th Cir. 2014)..13, 22

*Mendoza v. Borden*, 195 F. 3d 1238, 1249 (11th Cir. 1999) ...................................20

*Miller v. Kenworth of Dothan, Inc.,* 277 F. 3d 1269, 1275 (11th Cir. 2002) .. 16, 19, 20

*Morris v. Wallace Community College – Selma*, 125 F. Supp. 2d 1315, 1335 (S.D. Ala. 2001) ...............................................................................................11

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 103, 122 S. Ct. 2061, 153 L.Ed. 2d 106 (2002).............................................................. 17, 23, 24

*Nettles v. LSG Sky Chefs*, 211 Fed. Appx. 837, 839 (11th Cir. 2006).....................28

*Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F. 3d 798, 809 (11th Cir. 2010)....20

*Smithers v. Wynne*, 319 Fed. Appx. 755, 758 (11th Cir. 2008)...............................28

*Springer v. Convergys Customer Service Management Group, Inc*., 509 F. 3d 1344, 1347-48 (11th Cir. 2007) .................................................................. 14, 15

*Standard v. A.B.E.L. Services*, Inc., 161 F. 3d 1318, 1330 (11th Cir. 1998)...........12

*Trask v. Secretary Department of Veteran Affairs*, 822 F. 3d 1179, 1195-6(11th Cir. 2016) ...........................................................................................................28

*University of South Alabama v. American Tobacco Company*, 168 F. 3d 405, 412 (11th Cir. 1999)...........................................................................................11

*Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)…………………………..10

*Wells v. Gen. Dynamics Info. Tech., Inc.,* 571 Fed. Appx. 732, 736 (11th Cir. 2014) ...........................................................................................................28

*Will v. Michigan Department of State Police*, 491 U. S. 58, 109 S. Ct. 2034, 105 L.Ed. 2d 45 (1989)………………………………………………………………………...11

*Wright v. Chattahoochee Valley Community College*, 2008 WL 4877948 (M.D. Ala. 2008) ...........................................................................................11

*Zarra v. Tallahassee Housing Authority*, 686 Fed. Appx. 747, 754 (11th Cir. 2017) ...........................................................................................................16

**Statutes**

42 U.S.C. § 2000e-5(e) .........................................................................17

**COME NOW**, Lawson State Community College ("Lawson State or College"), Dr. Perry Ward ("Ward") and Sharon Crews ("Crews"), or sometimes referred to collectively as "Defendants", by and through counsel, and submit this their brief in support of their Motion for Summary Judgment as follows:

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     In 2005 Lawson State Community College ("Lawson State") and Bessemer State Technical College ("Bessemer State") were merged under the direction of the Chancellor of the Alabama Department of Postsecondary Education and the Alabama State Board of Education (Ex. 4-Affidavit of Dr. Perry Ward).  Lawson State was the surviving institution following the merger (Ex. 4-Affidavit of Dr. Perry Ward, ¶ 5).

2.     For years leading up to the merger, Lawson State and Bessemer State were state public two-year postsecondary institutions operated under the authority of the Alabama Department of Postsecondary Education and the Alabama State Board of Education.[1] (Ex. 4-Affidavit of Dr. Perry Ward, ¶ 6).

3.     Prior to the merger, Lawson State and Bessemer State each had Presidents, Deans, Chief Financial Officers and other employees having the same or similar duties at the respective institutions (Ex. 2- Ward Depo pp. 48:3-6; Ex. 4-

---

[1] By Alabama Act 2015-125 the Alabama Community College System (ACCS) succeeded the Alabama Department of Postsecondary Education as a department of the State of Alabama and the governance of the ACCS and its institutions was placed under the ACCS Board of Trustees.

Affidavit of Dr. Perry Ward, ¶ 7). Following the merger some of these individuals retained their duties and responsibilities (now as to both institutions) while others were assigned different duties and responsibilities (Ex. 2- Ward Depo pp. 48:19-22; 49:12-13; Ex. 4- Affidavit of Dr. Perry Ward, ¶ 8).

 4. Prior to the merger, Plaintiff was employed by Bessemer State as its Chief Financial Officer. Prior to the merger, Dr. Perry Ward and Ms. Sharon Crews were employed by Lawson State as its President and Dean of Business/Chief Financial Officer, respectively (Ex. 2-Ward depo p. 7:4-9; Ex. 3- Crews depo p. 14:7-8).

 5. Following the merger, Plaintiff's job duties and title were changed (Ex 1-Lawrence depo pp. 23:19-21, 27:16-18, 29:1-6, 136:11-16, Dx. 14). Plaintiff's new title was Director of Financial Services (Ex 1-Lawrence depo pp. 23:19-21, 27:16-18, 29:1-6, 136:11-16, Dx. 14). Plaintiff's new job duties included the responsibility for the operations of the College's bookstores, cafeterias, copy centers, post offices and vending on both campuses (Ex. 1-Lawrence depo pp. 28:11-15, 29:1-6, 106:3-13). Plaintiff considered these duties to be important (Ex. 1-Lawrence depo pp. 29:15-30:4). Plaintiff's salary and benefits were not affected by his change in title and duties (Ex. 1-Lawrence depo pp. 46:14-47:12, 191:11-15; Ex. 6-Affidavit of Janice McGee, ¶ 12).

6.     Following the merger, Dr. Ward retained his duties and responsibilities as President of the merged institution (Ex. 2-Ward depo p. 7:4-9).

7.     Following the merger, Ms. Crews retained the duties and responsibilities of Chief Financial Officer of the merged institution (Ex. 3-Crews depo p: 14:12-16; Ex.-5 Affidavit of Sharon Crews, ¶ 3).  Following the merger, Ms. Crews' title became Vice President for Administrative and Student Services (Ex. 5-Affidavit of Sharon Crews, ¶ 3).

8.     As part of the merger, Tavaneka Jones, a younger African-American female, was assigned the title and duties of the position of Director of Accounting (Ex. 1-Lawrence depo pp. 103:18-104:5, 105:17-19, 120:4-121:15; Ex. 3-Crews depo pp. 86:20-23, 94:17-23, 95:10-11).  The position of Director of Accounting has always been paid at a lesser salary on a lesser salary schedule than the position held by Plaintiff (Ex. 5 – Affidavit of Sharon Crews, ¶ 13; Ex. 6- Affidavit of Janice McGee, ¶ 4).

9.     In 2007, Plaintiff's job title was revised to Director of Financial Services-Auxiliaries (Ex. 1- Lawrence depo pp.  107:14-21; Ex. 6-Affidavit of Janice McGee ¶ 10).  Plaintiff's job duties, salary and benefits were unaffected by this revision in title (Ex. 1-Lawrence depo pp. 46:14-47:12; Ex. 6- Affidavit of Janice McGee, ¶ 12; Ex. H to Ex. 6-Affidavit of Janice McGee).

10.    In 2009, Plaintiff completed his Ph.D. in Higher Education Administration from the University of Alabama (Ex. 1-Lawrence depo p. 117:18-19, Dx. 6).  Plaintiff's Ph.D. did not relate to his responsibilities as Director of Financial Services – Auxiliaries (Ex. 1-Lawrence depo pp. 118:12-119:14).

11.    On June 15, 2010, Tavaneka Jones resigned from her position as Director of Accounting at Lawson State (Ex. 3-Crews depo p. 95:22-23; Ex. 6-Affidavit of Janice McGee).  Following Ms. Jones' departure, a search was conducted for the Director of Accounting position (Ex. 3-Crews depo p. 97:4-12).  Plaintiff did not apply for the position (Ex. 1-Lawrence depo pp. 41:10-42:3, 42:14-21, 121:4-8; Ex. 3-Crews depo p. 100:8-10).  The successful candidate for the Director of Accounting position was Monique Silas, a younger African-American female (Ex. 1-Lawrence depo pp. 51:17-18, 56:13-15, 120:4-121:15, 139:19-140:22; Ex. 3-Crews depo p. 97:13-23).

12.    In June 2014, Lawson State advertised to fill the position of Dean of Career and Technical Education (Ex. 2-Ward depo pp. 14:17-20, 19:14-18).  Plaintiff and approximately 30 other individuals applied for the position (Ex. 2-Ward depo p. 19:14-18).  Prior to reviewing any of the applications submitted, Dr. Ward closed the search on July 28, 2014 (Ex. 1-Lawrence depo p. 145:20-23; Ex. 2-Ward depo pp. 19:19-20:23; 33:14-23, Px. 9; Ex. 3-Crews depo pp. 83:23-84:8).

13.     In November 2014, after receiving authorization and approval from the Chancellor, Dr. Ward re-organized the positions of Donald Sledge and Nancy Wilson (Ex. 1-Lawrence depo p. 147:6-13; Ex. 2-Ward depo pp. 18:22-19:13, 39:18-40:14; Ex. 4-Affidavit of Dr. Perry Ward, ¶ 10; Ex. 6-Affidavit of Janice McGee, ¶ 6).   Mr. Sledge's position was re-organized from Assistant Dean of Career and Technical Education to Associate Dean of Career and Technical Education (Ex. 1-Lawrence depo pp. 147:14-20, 148:2-8; Ex. 2-Ward depo pp. 26:15-18; Ex. 6–Affidavit of Janice McGee, ¶ 6).   Ms. Wilson's position was reorganized from Chairperson/Center for Manufacturing and Engineering to Assistant Dean of Career and Technical Education (Ex. 1-Lawrence depo pp. 147:21-148:1; Ex. 2-Ward depo pp. 42:14-22; Ex. 6-Affidavit of Janice McGee, ¶ 6).   Mr. Sledge is a 64 year old (at time of reorganization) African-American male.  Ms. Wilson is a 50 year old (at time of reorganization) white female (Ex. 6-Affidavit of Janice McGee, ¶ 6).

14.     In December 2014, Lawson State contracted with the Berkshire Group for consulting services for the outsourcing of its bookstores (Ex. 3-Crews depo pp. 157:18-158:4; Ex. 5- Affidavit of Sharon Crews, ¶ 9).   Berkshire's services included assisting in the preparation of a request for proposals and analysis of any responses received (Ex. 3-Crews depo pp. 158:5-12; Ex. 5- Affidavit of Sharon Crews, ¶ 9).

15.     On July 29, 2015, Ms. Crews formed a Bookstore Vendor Selection Committee (Ex. 1-Lawrence depo pp. 88:13-89:3, 158:15-23, Dx. 22; Ex. 3-Crews depo p. 159:12-13).  Plaintiff was a member of this committee (Ex. 1-Lawrence depo p. 158:15-23, Exhibit 22; Ex. 3-Crews depo p. 187:18-20).

16.     After receipt and analysis of the proposals from responding vendors, and with the input of the Bookstore Vendor Selection Committee, Follett was selected as the third party vendor to lease and operate the Lawson State bookstores (Ex. 3-Crews depo p. 159:10-16; Ex. 5-Affidavit of Sharon Crews, ¶ 10).

17.     The transitioning to Follett began in November 2015 (Ex. 1-Lawrence depo pp. 171:18-172:6, Dx. 27; Ex. 5-Affidavit of Sharon Crews, ¶ 10).  Follett's actual operation of the College's bookstores began December 1, 2015 (Ex. 1-Lawrence depo pp. 171:18-172:6, Dx. 27; Ex. 5-Affidavit of Sharon Crews, ¶ 10). Plaintiff was part of the "ultra-smooth" transition of the bookstores to Follett (Ex. 1-Lawrence depo pp. 172:11-173:3, 197:13-22, Dx. 28).

18.     With Follett's taking over the operation of the Lawson State bookstores, a significant part of Plaintiff's job duties (operation of the bookstores) was eliminated (Ex. 2-Ward depo pp. 60:21-23; 64:17-19, 65:4-6; Ex. 3-Crews depo p. 114:14-17).  In December 2015, to replace in part these eliminated duties, Plaintiff was assigned on a trial basis, equipment audit duties involving the

TAACCCT Grant (Ex. 2-Ward depo pp. 62:4-7, 65:4-6, 65:20-66:13; Ex. 3-Crews depo p. 103:10-16).

19.    On April 6, 2016, Plaintiff and Ms. Crews met to discuss her evaluation of Plaintiff's job performance for the period of September 1, 2014 to August 30, 2015 (Ex. 3-Crews depo p. 42:5-13).   On the written evaluation Plaintiff received a "2" (needs improvement) on an individual evaluation item. Overall, the evaluation was satisfactory to above average (Ex. 1-Lawrence depo pp. 61:6-62:11; Ex. 3-Crews depo pp. 41:23-42:10, 43:1-14, 44:15-45:3; Ex. 8-April 6, 2016 Evaluation of Dr. Craig Lawrence).   During this meeting Ms. Crews made the comment that she didn't believe that Plaintiff cared about profits with respect to the bookstores (Ex. 1-Lawrence depo pp. 223:18-224:13; Ex. 3-Crews depo p. 179:8-15).

20.    Plaintiff was provided a revised job description on April 13, 2016 to include risk assessment duties (Ex. 1-Lawrence depo p. 192:5-11, Dx. 35).

21.    On April 28, 2016, Lawson State, Ms. Crews and Dr. Ward received their first notice of Plaintiff's initial EEOC charge (Ex. 6-Affidavit of Janice McGee, ¶ 8; Ex. 4 – Affidavit of Dr. Perry Ward, ¶ 16; Ex. 5-Affidavit of Sharon Crews, ¶ 19). Plaintiff's initial EEOC charge was filed on December 30, 2015 (See doc. 13-1-Second Amended Complaint).

22.   On June 29, 2016, Plaintiff filed an "Amendment and Supplement" with the EEOC to Plaintiff's December 30, 2015 charge.  The "Amendment and Supplement" allege that Plaintiff was the subject of retaliation between December 30, 2015 and April 6, 2016 (See doc. 13-1- Second Amended Complaint).

## ADDITIONAL FACTS IN SUPPORT OF SUMMARY JUDGMENT

1.   Prior to the merger, Lawson State was designated as a Historically Black College or University (HBCU) (Ex. 3-Crews depo pp. 15:21-16:10; Ex. 5-Affidavit of Sharon Crews).  This designation entitled Lawson State to certain Title III Federal funds for use in providing tuition reimbursement to employees attending other postsecondary institutions seeking degrees (Ex. 3–Crews depo pp. 16:7-14; Ex. 5- Affidavit of Sharon Crews).  After the merger, Lawson State retained the HBCU designation but only as to the Birmingham campus (Ex. 3–Crews depo p. 16:15-23).  Only employees based on the Birmingham campus (as opposed to the Bessemer campus) could seek reimbursement (Ex. 3-Crews depo pp. 16:20-23, 178:3-7; Ex. 5-Affidavit of Sharon Crews, ¶ 4).  Plaintiff was not based on the Birmingham campus until after he had received his Ph.D. (Ex. 1-Lawrence depo pp. 175:6-8, 176:2-8).

2.   Prior to November 2014 Ms. Crews, as Vice President for Administrative Services, had made the decision to obtain Dr. Ward's permission to pursue the outsourcing or leasing of the College's two bookstores to a third party

vendor (Ex. 3-Crews depo pp. 152:15-153:8, 156:11-157:10; Ex. 5-Affidavit of Sharon Crews, ¶ 8).

3.    During the April 6, 2016 meeting, Ms. Crews assigned Plaintiff risk assessment duties to replace, in part, Plaintiff's eliminated bookstore duties (Ex. 3 - Crews depo pp. 106:23-107:9).

4.    Upon receipt of his revised job description, Plaintiff was aware that he was expected to begin performing the referenced risk assessment duties (Ex. 1-Lawrence depo p. 192:5-11, Dx. 35; Ex. 3 – Crews depo p. 107:3-9).

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."  Fed.R.Civ.P.56(c).  Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party, who is required to "go beyond the pleading" to establish that there is a "genuine issue for trial."  *Id.* At 324, 106 S.Ct. 2548 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); See also, *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (all justifiable inferences must be drawn in the non-moving parties favor).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing cases *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989).  Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing parties position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252, 106 S.Ct.

2505).   See *Chandler v. Volunteers of America, Southeast, Inc.,* 126 F.Supp.3d 1216 (N.D. Ala. 2015).

## I.  PLAINTIFF'S §1981 VIA § 1983 CLAIMS AGAINST LAWSON STATE ARE BARRED AS A MATTER OF LAW

Section 1981 does not provide for a direct cause of action against state actors. *Butts v. County of Volusia* 222 F. 3d. 891, 894 (11th Cir. 2000).  It is well established that the 11th amendment to the United States Constitution bars § 1983 claims in federal court against the State or an agency of the State. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct.  357, 57 L.Ed. 2d 1114 (1978). Moreover, States and their agencies are not "persons" suitable under § 1983. *Will v. Michigan Department of State Police*, 491 U. S. 58, 109 S. Ct. 2034, 105 L.Ed. 2d 45 (1989). Public universities and community colleges are agencies or instrumentalities of the State of Alabama and are thus immune from suit in federal court. *University of South Alabama v. American Tobacco Company*, 168 F. 3d 405, 412 (11th Cir. 1999); *Morris v. Wallace Community College – Selma*, 125 F. Supp. 2d 1315, 1335 (S.D. Ala. 2001); *Wright v. Chattahoochee Valley Community College*, 2008 WL 4877948 (M.D. Ala. 2008). Thus, Counts 1 through 4 of Plaintiff's second amended Complaint are due to be dismissed as to Lawson State as a matter of law.

## II. PLAINTIFF'S FAILURE TO PROMOTE CLAIM

At the outset, Defendants submit that Plaintiff's failure to promote claim is time barred. Failure to promote claims were actionable under §1981 prior to its

11

amendment in 1991. Thus, Alabama's two-year statute of limitations applies to this claim. See, *Edwards v. National Vision*, *Inc.*, 586 Fed. Appx. 854, 859-60 (11th Cir. 2014). The complained of promotion (paragraph 53 of Plaintiffs' second amended Complaint) became effective on November 1, 2014 (Ex. 6-Affidavit of Janice McGee ¶ 7), more than two years prior to the original Complaint being filed in this case.  Thus, Plaintiff's failure to promote claim is time barred.

   Section 1981 and Title VII have the same requirements for proof and employ the same analytical framework. *Standard v. A.B.E.L. Services*, Inc., 161 F. 3d 1318, 1330 (11th Cir. 1998).  In the failure to promote context, the prima facie case consists of showing the following elements: (1) that Plaintiff belongs to a protected class; (2) that he was qualified for the promotion; (3) that he was rejected despite qualifications and (4) another equally or less equally qualified employee from outside plaintiffs' class was promoted.  *Brown v. Alabama Department of Transportation*, 597 F. 3d 1160, 1174 (11th Cir. 2010). Defendants respectfully submit that Plaintiff cannot establish a prima facie case, i.e. that the Associate Dean Position would have been a promotion for Plaintiff.

   The Associate Dean of Career Technical Education at Lawson State is paid from the Alabama Community College System C1 Salary schedule.  For his entire career at Lawson State, Plaintiff has been paid from the C1 Salary Schedule.  Thus, even if Plaintiff had been granted the Associate Dean position there would have

been no change in Plaintiff's salary or benefits.  This would have been a lateral move for Plaintiff. (Ex. 4-Affidavit of Dr. Perry Ward ¶ 13*).  See, Marable v. Marion Military Institute*, 595 Fed. Appx. 921, 926 (11th Cir. 2014).

Assuming Plaintiff could make out a prima facie case, the burden would then shift to the Defendants to offer a legitimate non-discriminatory reason for the appointment of an African-American (Donald Sledge) to the Associate Dean position. *Flowers v. Troup County, Georgia, School District*, 803 F.3d 1327, 1336 (11th Cir. 2015).  Dr. Ward has done so.[2]  To put this in context, in the fall of 2015 Lawson State sought approval of reorganizations for Donald Sledge, a 64 year old black male, and Nancy Wilson, a 50-year-old white female.   Mr. Sledge's proposed reorganization was from the position of Assistant Dean of Career Technical Education to Associate Dean of Career Technical Education. Ms. Wilson's reorganization was from Chairperson/Center for Manufacturing and Engineering to Assistant Dean Career Technical Education.  Only the Chancellor of the Alabama Community College System may approve the reorganization of a position at a State community college.  (Ex. 6-Affidavit of Janice McGee ¶ 6)  In seeking these reorganizations the College was required to submit specific information for review by the Chancellor's office. (Ex. 6-Affidavit of Janice McGee ¶ 6, Exs. A & B to Affidavit of Janice McGee).  Ultimately, the Chancellor

---

[2] Sharon Crews had no involvement in the reorganization of Donald Sledge. (Ex. 3 Crews depo.p:87:18-22)

approved the reorganizations of Mr. Sledge and Ms. Wilson which became effective on November 1 and 10, 2014, respectfully. (Ex. 6-Affidavit of Janice McGee ¶ 7, Exs. A, B, C, D, E & F to Affidavit of Janice McGee ¶ 7).

Dr. Ward's decision to seek permission to reorganize the positions in question arose from his belief that Dr. Bruce Crawford needed additional assistance in administering the career technical education area. (Ex. 4-Affidavit of Dr. Perry Ward ¶ 11).  Through the later approved reorganizations, Dr. Ward's selection of Mr. Sledge and Ms. Wilson was based on their leadership and many years of experience as instructors and administrators in the career technical education division at Lawson State. (Ex. 4-Affidavit of Dr. Perry Ward ¶ 11).  An employee's leadership and experience in a specific area of his/her employer's operations are certainly qualities or factors which would motivate a reasonable employer in making employment decisions. See, *Springer v. Convergys Customer Service Management Group, Inc*., 509 F. 3d 1344, 1347-48 (11th Cir. 2007). Plaintiff's allegation that he was more qualified than Mr. Sledge is without merit. Plaintiff lacked the leadership and experience of Mr. Sledge in the career technical division at Lawson State.  Plaintiff's doctorate degree did not make him such a superior candidate that no reasonable person in the exercise of impartial judgment, could have chosen Mr. Sledge over Plaintiff. *Haugabrook v. Cason*, 518 Fed. Appx. 803, (11th Cir. 2013) (Table) 2013 WL 19208901 pp. 4-5, citing, *Springer*

*v. Convergys Customer Service Management Group*, *Inc*. 509 F. 3d 1344, 1349 (11th Cir. 2007).  There is absolutely no evidence that Plaintiff's race played any part in the decisions of Dr. Ward relating to the Career Technical Education Dean, Career Technical Education Associate Dean or Career Technical Education Assistant Dean positions. Dr. Ward and Ms. Crews are therefore entitled to Summary Judgment as a matter of law as to Plaintiff's failure to promote claim (Count I).

### III. RETALIATION CLAIMS

A Plaintiff may establish a claim of retaliation under Title VII by proving that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action. See, *Butler v. Alabama Department of Transportation*, 536 F. 3d 1209, 1212 – 13(11th Cir. 2008).  In a retaliation case, a materially adverse action is one that might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern and Santa Fe Railroad Company v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L.Ed. 2d 345 (2006).  The acts must be significant rather than trivial.  An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights and minor annoyances that often take place at work. 126 S. Ct. at 2415 (or in the case of a retaliatory hostile work environment claim, the

harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment based on a protected characteristic. See*, Miller v. Kenworth of Dothan, Inc.,* 277 F. 3d 1269, 1275 (11th Cir. 2002).

The only protected activity referenced in Plaintiff's second amended Complaint is the filing of an EEOC charge and the subsequent amendment or supplement to the initial charge. While Plaintiff's initial charge was apparently filed with the EEOC on December 30, 2015, the Defendants did not receive notice of Plaintiff's initial charge until April 28, 2016. (Ex. 6-Affidavit of Janice McGee ¶ 8, Ex. 4-Affidavit of Dr. Perry Ward ¶ 16, Ex. 5-Affidavit of Sharon Crews ¶ 19). Plaintiff's amended or supplement to his original charge was filed on June 29, 2016.  Plaintiff's second amended Complaint fails to allege any retaliatory act engaged in by any of the Defendants after they became aware of Plaintiff's initial charge on April 28, 2016.  Thus, the causation (but for) element of Plaintiff's prima facie case is nonexistent.  Plaintiff must establish that the decision maker had actual knowledge of Plaintiff engaging in a protected activity at the time the alleged retaliatory decision was made. *Zarra v. Tallahassee Housing Authority*, 686 Fed. Appx. 747, 754 (11th Cir. 2017). Moreover, the acts complained of were not materially adverse to Plaintiff.  See, *Edwards v. National Vision, Inc*., 568 Fed. Appx. 854, 862 (11th Cir. 2014)(assignments of cleaning duties, assigning Plaintiff

more patient's than other employees, telling other employees not to talk to Plaintiff, denying Plaintiff's request for leave, writing Plaintiff up and placing Plaintiff on a performance improvement plan were not materially adverse to Plaintiff so as to support a claim for retaliation). See also, *Hall v. Siemens VDO Automotive,* 481 Fed.Appx. 499, 504-5 (11th Cir. 2012).   Defendants are therefore entitled to summary judgment as to Plaintiff's retaliation claims as a matter of law.

### IV. TITLE VII RACE AND GENDER DISCRIMINATION

To the extent Plaintiff's second amended complaint attempts to state a claim for race or gender discrimination under Title VII against Lawson State, such attempt fails. Under Title VII's procedural bar, a Plaintiff must file an EEOC charge within 180 days after an unlawful employment practice.   42 U.S.C. § 2000e-5(e). When alleging discrete acts of discrimination, a Plaintiff may only recover for acts that occurred within 180 days of the Plaintiff's filing a charge of discrimination with the EEOC.   *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 103, 122 S. Ct. 2061, 153 L.Ed. 2d 106 (2002).  Thus, only discrete acts occurring within the 180 day period prior to the Plaintiff's December 30, 2015 EEOC charge can serve as a basis for Plaintiff's Title VII discrimination claims.

A Plaintiff may establish a prima facie case of discrimination by showing (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action and (4) he received less

favorable treatment than someone similarly situated outside his protected class. *Flowers v. Troupe County, Georgia, School District,* 803 F. 3d 1327, 1336 (11th Cir. 2015); *Ezell v. Wynne*, 802 F. 3d 1217, 1226 (11th Cir. 2015).

An adverse employment action is not only an element of the prima facie case, but an element of the claim itself. *Holland v. Gee*, 677 F. 3d 1047, 1056 (11th Cir. 2012).  An adverse employment action is a serious and material change in the terms, conditions, or privileges of employment.  An adverse employment action requires a significant change in employment status, such as hiring, firing, failing to promote, reassignment that was significantly different responsibilities, or a decision causing a significant change in benefits.  *Davis v. Town of Lake Park, Florida*, 245 F. 3d 1232, 1239 (11th Cir. 2001).  Not all conduct by an employer negatively affecting an employee constitutes an adverse employment action. *Davis*, 245 F. 3d at 1238.  Title VII is neither a general civility code or a statute making actionable the ordinary tribulations of the workplace.  *Cotton v. Cracker Barrel Old Country Store*, *Inc*., 434 F. 3d 1227, 1234 (11th Cir. 2006).  Thus, Title VII was not designed to make federal courts second guess the business judgment of employers.  *Davis*, 245 F. 3d at 1244. Because work assignment claims strike at the very heart of an employer's business judgment and expertise, absent unusual circumstances, they typically do not constitute adverse employment actions. *Davis*, 245 F. 3d at 1244-45.

Plaintiff's second amended Complaint fails to allege any act on the part of Defendants during the 180 day period prior to December 30, 2015 which could even remotely be considered an adverse employment action.  Moreover, Plaintiffs second amended Complaint fails to identify any comparator outside Plaintiff's protected class who was more favorably treated during this period. Plaintiff's race and sex discrimination claims thus fail.

## V.  HOSTILE WORK ENVIRONMENT CLAIMS

To succeed on a claim of hostile work environment, a Plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Adams v. Austal, U.S.A., LLC*, 745 F. 3d 1240, 1248 (11th Cir. 2014).  An employee wishing to establish a hostile work environment claim must show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a hostile discriminatory abusive working environment; and (5) that the employer is responsible for such environment. *Miller v. Kenworth of Dothan*, 277 F. 3d 1269, 1275 (11th Cir. 2002).

The inquiry regarding the 4th element – whether the harassment was sufficiently severe or pervasive – contains both a subjective and objective component. *Reeves v. C.H. Robinson Worldwide, Inc.,* 594 F. 3d 798, 809 (11th Cir. 2010).   The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and the objective severity of the harassment should be judged from the perspective of a reasonable person in Plaintiff's position, considering all the circumstances. *Adams*, 754 F. 3d at 1249.   To be actionable, the behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive. *Miller*, 277 F. 3d at 1276. With regard to the objective severity of the alleged harassment, the inquiry is fact intensive, with the Court considering 4 factors: (1) the frequency of the conduct; (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Adams*, 754 F. 3d at 1250-51.

As to frequency, the 11th Circuit considers a perceived hostile incident every two months, or even every month, to be too infrequent to weigh in favor of a hostile work environment claim. See, *Mendoza v. Borden*, 195 F. 3d 1238, 1249 (11th Cir. 1999).  Paragraphs numbered 14, 15, 17, 19, 20 and 23 of Plaintiff's

second amended Complaint allege 7 perceived hostile actions in the year 2005. Paragraph numbered 21 of Plaintiff's second amended Complaint alleges one perceived hostile action in 2007.  Paragraph numbered 28 of Plaintiff's second amended Complaint alleges 1 perceived hostile action in 2009.  Paragraphs numbered 24 and 30 of Plaintiff's second amended Complaint allege 2 perceived hostile actions in the year of 2010. Paragraphs numbered 25, 26, 27, 29 and 31 of Plaintiff's second amended Complaint allege 5 perceived hostile actions in the year 2014.  Paragraphs numbered 32, 33, 34, 35, 36, 37, 38, 39, 40, 41 and 43 of Plaintiff's second amended Complaint allege 11 perceived hostile actions in the year 2015.  The paragraphs numbered 46, 47, 48 and 49 of Plaintiff's second amended Complaint allege perceived 5 hostile actions in the year 2016.  Based on the law of the 11th Circuit, the perceived hostile actions alleged in Plaintiff's second amended Complaint are too infrequent to support or weigh in favor of his hostile work environment claims.

Moreover, Plaintiff has admitted that at no time during his employment at Lawson State has he been physically threatened. (Ex. 1-Lawrence depo– page 63:7 – 10).

Further, there is no credible evidence that the perceived hostile actions about which Plaintiff complains unreasonably interfered with Plaintiff's job performance. The evidence is in fact to the contrary.  Plaintiff acknowledges that for the last

21

three of evaluations periods he has rated his own job performance as satisfactory to above average.   (Ex. 1-Lawrence depo pp.   58:14-21, 59:19-60:14.) This self-assessment of Plaintiff's job performance is consistent with his evaluations at Lawson State prior to this period. See, Ex. I to Ex. 6-Affidavit of Janice McGee; *Marable*, 595 Fed. Appx at 927-28.

With regard to the severity of the complained of conduct, most if not all perceived hostile actions have reasonable non-discriminatory explanations.  By way of example, with regard to the events surrounding the merger, including Plaintiff being moved out of his office and being assigned a different title and duties, the actions were by direction of the Vice Chancellor of the Alabama Department of Postsecondary Education, Debbie Dahl, because she could not get Plaintiff to provide requested information on the one hand (Ex. 3-Crews depo pp 22:11-23.22) or because of a vendetta unrelated to Plaintiff's race or gender (Ex. 1-Lawrence depo pp. 79:8-80:15).

Next, the addition of "Auxiliaries" to Plaintiff's job title in 2007 to more accurately described his actual duties (Ex. 5-Affidavit of Sharon Crews ¶ 14) clearly has not subjected Plaintiff to discriminatory intimidation, ridicule and insult.

Next, Plaintiff's ineligibility for tuition reimbursement based on Title III regulations does not subject him to discriminatory intimidation, ridicule and insult.

(Ex. 5-Affidavit of Sharon Crews ¶ 4.)  Moreover, as Plaintiff's allegation in this regard involves a discrete act, it cannot serve as the basis for a hostile work environment claim.  *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 114-115, 122 S. Ct. 2061, 2073, 153 L.Ed. 2d 106 (2002).

Paragraph numbered 24 of Plaintiff's second amended Complaint complains about the duties assigned to Monique Silas. Ms. Silas was appointed to the position of Director of Accounting after an advertised search in 2010. (Ex. 3-Crews depo p. 97:4-12)  Plaintiff did not apply for the position. (Ex. 1-Lawrence depo pp. 41:10-42:3, 42:14-21, 121: 4-8)  Clearly, the hiring of Ms. Silas did not subject Plaintiff to discriminatory intimidation, ridicule and insult.

Paragraph 30 of Plaintiff's second amended Complaint, Plaintiff's submission of six recommendations relative to the bookstore, is an assertion that Plaintiff did not receive the recognition he expected. The reality is most of these activities had been implemented before Plaintiff made his recommendations.  (Ex. 5-Affidavit of Sharon Crews ¶ 7). Plaintiff was not subjected discriminatory intimidation, ridicule and insult.

With regard to paragraph numbered 25 of Plaintiff's second amended Complaint, Ms. Crews was unable to locate Plaintiff for three hours on the first day of class. She expected him to be in the bookstore.  The email was sent only to

Plaintiff. (Ex. 5-Affidavit of Sharon Crews ¶ 15). The email does not subject Plaintiff to discriminatory intimidation, ridicule and insult.

Paragraphs 26 and 27 of Plaintiff's second amended Complaint relate to discrete acts which can't serve as a basis for a hostile work environment claim. *National Railroad Passenger Corporation v. Morgan*, 536 U.S. at 114-15. Nonetheless, the complained of acts did not subject Plaintiff to discriminatory intimidation, ridicule and insult.

Paragraph 29 of Plaintiff's second amended Complaint relates to Plaintiff's perception that others received accolades when he did not.  Even if true, this did not subject Plaintiff to discriminatory intimidation, ridicule and insult.

Paragraph 31 of Plaintiff's second amended Complaint relates to Plaintiff's submitting a recommendation for a hybrid bookstore. Ms. Crews did not respond to Plaintiff's recommendation because she had already decided to pursue the outsourcing of the College's bookstores. (Ex. 5-Affidavit of Sharon Crews ¶ 11). Again, no discriminatory intimidation, ridicule and insult arose from Ms. Crews not responding.

Paragraphs 32, 33, 35 and 36 of Plaintiff's second amended Complaint all relate to a July 2015 administrative retreat.  Plaintiff's title was misstated in the retreat program.  In addition, Plaintiff complains that discussion of backups of various personnel did not include him as a potential backup. In addition, there was

24

discussion at the retreat of Plaintiff being assigned duties relative to kiosks and suggestion boxes.  The misstating of Plaintiff's title was due to a mistake. The backup positions have never been assigned.  The Plaintiff was never assigned the kiosk and suggestion box duties (Ex. 1-Lawrence depo pp. 148:9-150:11; Ex. 3-Crews depo pp. 75:22-77:8; Ex. 4-Affidavit of Dr. Perry Ward ¶ 15; Ex. 5-Affidavit of Sharon Crews, ¶ 16). These perceived hostile actions did not subject Plaintiff to discriminatory intimidation, ridicule and insult.

Paragraph 37 of Plaintiff's second amended Complaint alleges that Plaintiff was harassed by Ms. Crews as a result of Ms. Crews speaking with Plaintiff's subordinates.  That Plaintiff was harassed in this regard is utter nonsense.  Ms. Crews was required to communicate with Plaintiff's subordinates when he could not be found or couldn't answer the question raised. (Ex. 5-Affidavit of Sharon Crews ¶ 17). There is no evidence that Ms. Crews' communications with Plaintiff's subordinates resulted in Plaintiff being subjected to discriminatory intimidation, ridicule and insult.

Paragraph 39 of Plaintiff's second amended Complaint makes reference to an allegedly hostile and harassing email from Ms. Crews dated August 20, 2015. Defendants invite the Court to review the email attached as Exhibit 20 to Plaintiff's deposition.  The video camera referenced in the above email was Plaintiff's best friend. If Plaintiff did as Ms. Crews had requested the video camera would provide

a record of his compliance. This email did not subject Plaintiff to discriminatory intimidation, ridicule and insult.

Paragraphs 38, 40, 41, 42 and 43 of Plaintiff's second amended Complaint all relate to the leasing the College's bookstore to a third party vendor (Follett). In November 2014 the decision was made to pursue the outsourcing or leasing of the College's bookstores. (Ex. 5-Affidavit of Sharon Crews ¶ 8).  In furtherance of this plan, the College engaged the Berkshire Group to assist with the preparation of a request for proposals and analysis of any responses received. (Ex. 5-Affidavit of Sharon Crews ¶ 9).  The College further enlisted the assistance of legal counsel. (Ex. 5-Affidavit of Sharon Crews ¶ 9).  Ms. Crews formed a bookstore vendor selection committee July 29, 2015 (Ex. 1-Lawrence depo pp. 88:13-89:3, 158:15-23, Dx. 22; Ex. 3-Crews depo p. 159:12-13). Plaintiff was a member of the committee. (Ex. 1-Lawrence depo p. 158:15-23, Exhibit 22; Ex. 3-Crews depo p. 187:18-20).  Each member of the committee had input in the selection process and the ultimate selection of Follett. (Ex. 3-Crews depo p. 159:10-16; Ex. 5-Affidavit of Sharon Crews, ¶ 10).   Plaintiff was involved in the transitioning of the bookstores to Follett. (Ex. 1-Lawrence depo pp. 172:11-173:3, 197:13-22, Dx. 28). These perceived hostile actions did not subject Plaintiff to discriminatory intimidation, ridicule and insult.

Paragraph 45 to 50 of Plaintiff's second amended Complaint relate to Plaintiff's retaliation claims which are addressed in the retaliation section above. To the extent Plaintiff relies on these allegations for any non-retaliation hostile work environment claim, none of these perceived hostile actions subjected Plaintiff to discriminatory intimidation, ridicule and insult.   Defendants will however briefly address paragraphs 48 and 49.

Plaintiff complains that upon receiving his risk assessment duties in April 2016, his attempts to perform these duties were made more difficult because Ms. Crews did not announce his authority to the departments in which he was to perform risk assessments.  In the 10 years prior to April 2016, Ms. Crews had sent individual employees of the College out to do inventories of various divisions and departments and in doing so had not announced their authority to conduct these inventories prior to sending them out to perform the same. (Ex. 3-Crews depo p. 187:4-14).  Plaintiff never asked Ms. Crews to announce his authority until the fall of 2016. (Ex. 1 Lawrence depo pp. 209:10-19, 227:16-23).   When he made the request, Ms. Crews honored his request. (Ex. 5-Affidavit of Sharon Crews ¶ 18). Again, this perceived hostile action did not subject Plaintiff to discriminatory intimidation, ridicule and insult.   See also, Ex. 7 – Affidavit of Dr. Bruce Crawford, ¶ 4, 5.

Even if it were assumed only for the sake of argument that an objectively viewed hostile environment did exist, Plaintiff's hostile work environment claims would nevertheless fail.  A Plaintiff's naked assertion that they have been subjected to discriminatory hostile treatment is not sufficient to constitute a hostile work environment.  Rather, the Plaintiff must show the hostile treatment was based on his protected status.  *Jones v. UPS Ground Freight*, 683 F. 3d 1283, 1297 (11th Cir. 2012).  A Plaintiff must provide specific examples of conduct and demonstrate beyond speculation how the alleged hostile act was based on Plaintiff's protected class.  See, *Wells v. Gen. Dynamics Info. Tech., Inc.,* 571 Fed. Appx. 732, 736 (11th Cir. 2014); *Chandler v. Volunteers of America, Southeast, Inc*., 126 F. Supp. 3d 1216, 1227-28 (N.D. Ala. 2015).  Plaintiff has failed to establish by credible evidence that the complained of hostile acts were based on his race or gender, or age for that matter. Plaintiff's hostile work environment claims thus fail. See, *Wells v. Gen. Dynamics Info. Tech., Inc*., 571 Fed. Appx. 732, 736 (11th Cir. 2014); *Smithers v. Wynne*, 319 Fed. Appx. 755, 758 (11th Cir. 2008); *Adams v. Austal*, *U.S.A. LLC*, 754. 3d 1240, 1254 – 57; *Chandler v. Volunteers of America, Southeast, Inc.,* 126 F. Supp. 3d 1216, 1227 – 28 (N.D. Ala. 2015); *Nettles v. LSG Sky Chefs*, 211 Fed. Appx. 837, 839 (11th Cir. 2006) (Race) and *Trask v. Secretary Department of Veteran Affairs*, 822 F. 3d 1179, 1195-6(11th Cir. 2016)(Gender).

## VI. AGE DISCRIMINATION IN EMPLOYMENT ACT CLAIMS

Counts 9 and 10 Plaintiff's seconded amended Complaint assert claims under the Age Discrimination in Employment Act for discrimination and hostile work environment against Lawson State. These claims are barred by the 11th Amendment to the United States Constitution. *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640, 145 L.Ed. 2d 542 (2000). Even if these claims were not barred they would nonetheless fail based on the arguments and authorities cited in the preceding sections of Defendants' brief. There is no evidence that Plaintiff was subjected to an adverse employment action based on his age or that he was subjected to discriminatory intimidation, ridicule and insult based on his age. Moreover, Plaintiff's Second Amended Complaint fails to allege any adverse employment action occurring within 180 days of Plaintiff filing his initial EEOC charge.

## CONCLUSION

Based on the foregoing arguments and authorities, Lawson State, Dr. Perry Ward and Ms. Sharon Crews, separately and severally, are entitled to the entry of a summary judgment in their favor as a matter of law as to all claims in Plaintiff's Second Amended Complaint.

29

Respectfully submitted,


*/s/ David M. O'Brien, Esq.*
David M. O'Brien, Esq.  (OBR002)


OF COUNSEL:

**ALABAMA COMMUNITY COLLEGE SYSTEM**
Division of Legal
P.O. Box 302130
Montgomery, AL 36130
Phone (334) 293-4604
E-mail: david.obrien@accs.edu


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been filed electronically with the Clerk of the Court using the *CM/ECF* system which will send notification of such filing to the following counsel of record and has been served on counsel via email and by placing a copy of same in the U.S. Mail, postage prepaid and properly addressed, on this 30th day of November, 2017.


John D. Saxon, Esq.
Donna Smith Cude, Esq.
John D. Saxon, P.C.
2119 3rd Avenue North
Birmingham, AL  35203


*/s/ David M. O'Brien, Esq.*
David M. O'Brien, Esq.  (OBR002)


30