## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CRAIG D. LAWRENCE, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:16-cv-01885-AKK** |
| **LAWSON STATE COMMUNITY** | ) | |
| **COLLEGE, ET AL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Dr. Craig Lawrence, Ph.D., alleges that his employer, Lawson State Community College, and his supervisors, Dr. Perry Ward, Ph.D., and Sharon Crews, in violation of Section 1981 of the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Age Discrimination in Employment Act, 29 U.S.C. § 623, failed to promote him, subjected him to a hostile work environment because of his race, age, and/or gender, and retaliated against him when he complained. Doc. 15. The Defendants have filed a motion for summary judgment, doc. 20, which is fully briefed and ripe for consideration, docs. 21; 26; & 28. After reading the briefs, viewing the evidence, and considering the relevant law, the court finds that the motion is due to be granted.

# I.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version

of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.     FACTUAL BACKGROUND

Dr. Lawrence is a 61 year old Caucasian male currently employed as the Director of Financial Services and Risk Assessment at Lawson State. Doc. 26 at 9. Dr. Lawrence started his career as a professor at Bessemer State Technical College, where he ultimately became the Chief Financial Officer. Docs. 21 at 7; 26 at 9-10. He joined Lawson State when it merged with Bessemer Tech in 2005 and hoped to oversee general accounting, auditing, and auxiliaries as the Director of Financial Services. Docs. 21 at 6-7; 22-1 at 26-27; 22-3 at 13; 22-5 at 8; 26 at 9-11. Instead, Lawson State made Dr. Lawrence the "Director of Financial Services – Auxiliaries," charging him with operation of the bookstores, cafeterias, copy centers, and post offices. Docs. 21 at 7-8; 26 at 10-12.

Lawson State named a younger African American woman as Director of Accounting, a position that oversaw the college's accounting functions. Docs. 21 at 8; 26 at 12. This woman had served as Internal Auditor at Lawson State prior to the merger. Doc. 22-5 at 24-26. When she resigned in 2010, Lawson State hired another African American woman as her replacement. Docs. 21 at 9; 26 at 12.

Dr. Lawrence believes that the President and Vice President of Lawson State, Dr. Perry Ward and Sharon Crews, who are both African American, relegated him to auxiliaries oversight to "ostracize" him from the college's main business affairs. Doc. 26 at 11. For their part, Dr. Ward and Crews testified that Vice Chancellor Debbie Dahl instructed them not to involve Dr. Lawrence in the business office affairs or financial operations of the merged institution. Docs. 22-3 at 13; 22-5 at 8. Crews claims that Dahl had cited Dr. Lawrence's "non-responsiveness" as the reason for her directive, doc. 22-5 at 8, while Dr. Ward cites problems with the audits at Bessemer Tech, doc. 22-3 at 13. However, Dr. Lawrence's relevant evaluations note that he led Bessemer Tech to three straight successful audits. Doc. 22-6 at 27.

In 2014 Dr. Lawrence applied for the posted position of Dean of Career and Technical Education.[1] Docs. 21 a 9; 26 at 18. Instead of reviewing any of the

---

[1] The briefing suggests that Dr. Lawrence did not apply for this position or that Lawson State failed to post it. *See* doc. 26 at 19. However, Dr. Lawrence's deposition testimony and the

roughly thirty applications, Dr. Ward closed the search and requested authorization to reorganize existing positions to cover the duties of the vacant position. Docs. 21 at 9; 26 at 19. As justification for his decision, Dr. Ward claims that the posting created a disruption:

> It got to be a problem for me because a number of our personnel on campus started what I call posturing for the position saying—from what I heard, they were going to get the position, they needed the position, they weren't going to work for this particular person if they got it. It started to be extremely disruptive to the campus community.

Doc. 22-3 at 5. As a result of the reorganization, Dr. Ward changed the title and respective duties of two employees: Donald Sledge (a sixty four year old African American man)—from Assistant Dean of Career and Technical Education, to Associate Dean of Career and Technical Education; and Nancy Wilson (a fifty year old Caucasian woman)—from Chairperson for Manufacturing and Engineering, to Assistant Dean of Career and Technical Education. Docs. 21 at 10; 26 at 19-20.

Dr. Lawrence believes that racial animus motivated Dr. Ward's decision to close the search and to reorganize the duties instead. Doc. 26 at 31-32. Dr. Lawrence also alleges that in 2015 Dr. Ward excluded him for racial reasons from the group of eighteen "backups" Dr. Ward selected for higher level employees (at least sixteen of whom were African Americans). Docs. 15 at 13; 26 at 13, 34.

---

recommendation letters he provided in support of his application prove otherwise. *See* docs. 22-1 at 10; 22-2 at 80; 22-4 at 11-13.

As for Crews, Dr. Lawrence maintains that she "undermined" his authority daily by ignoring the chain of command in the bookstore. Doc. 26 at 16. Allegedly, when one of Dr. Lawrence's subordinates repeatedly directed her questions and work-related issues to Crews instead of to Dr. Lawrence, Crews reprimanded him instead of the employee.[2] Doc. 26 at 17. Also, Crews apparently excluded Dr. Lawrence from meetings and decisions about the bookstore, including whether to outsource the operations. Docs. 15 at 14-15; 22-5 at 44. Crews also purportedly assigned Dr. Lawrence "demeaning" duties, such as maintaining the student information kiosks and answering the suggestion boxes. Doc. 15-1 at 5; 21 at 11-12. Finally, in an email to Dr. Lawrence regarding his absence from the bookstore on one occasion, Crews warned Dr. Lawrence that she could review the surveillance camera to verify his response. Docs. 15 at 15; 22-1 at 39; 22-5 at 37; 22-6 at 123. Dr. Lawrence contends that race, gender, and/or age based animus motivated Crews' actions, noting in support that Crews' "cabinet" is "made up exclusively of African Americans," that Crews has hired mostly African American women for the business office, and that Crews made a "negative racial

---

[2] The employee apparently left her work station twice without permission, which resulted in the employee and Dr. Lawrence arguing in person and by email. Dr. Lawrence forwarded the email chain to Crews, who responded "I don't have any advice on your handling this situation. You are truly wrong. She is probably too emotional to speak with you with a professional tone. You should have spoken with her before you began the email chain. I need to be in the meeting when you and [she] talk. Please leave the situation alone." Doc. 22-6 at 125-28.

comment" in a meeting that another white male employee "was not going to push this black girl around." Doc. 26 at 18, 34.

In addition to these alleged instances of discrimination, Dr. Lawrence contends that Dr. Ward and Crews retaliated against him for filing a charge with the Equal Opportunity Employment Commission by engaging in "further harassment and discrimination." Doc. 15-2. Allegedly, Crews (1) removed him from an email chain about a grant project, (2) directed him to conduct an internal audit without first informing the affected employees to expect a call from Dr. Lawrence, and (3) gave him "the lowest evaluation score [he has] received in [his] career." Doc. 15-2 at 7.

## III. ANALYSIS

Based on this alleged conduct, Dr. Lawrence filed this lawsuit. Doc. 1. In his Second Amended Complaint, Dr. Lawrence lists ten counts against Lawson State, Crews, and Dr. Ward. Counts One through Four allege Section 1981 claims "via Section 1983" against all three defendants, including official and individual capacity claims against Dr. Ward and Crews, for failure to promote (Count One), retaliation (Count Two), racially hostile work environment (Count Three), and retaliatory hostile work environment (Count Four). Doc. 15 at 19-26. Counts Five through Eight allege Title VII claims against the college for retaliation, racially hostile work environment, sexually hostile work environment, and retaliatory

hostile work environment, respectively. Doc. 15 at 27-33. Finally, Counts Nine and Ten allege claims under the ADEA against the college for discrimination and retaliation, respectively. Doc. 15 at 33-36. The Defendants have moved for summary judgment on all counts.

Many of Dr. Lawrence's claims are not cognizable. For example, Lawson State is an "arm of the state" of Alabama for purposes of Eleventh Amendment immunity.[3] *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81 (1977). As such, it is immune from Section 1981 and ADEA liability, and summary judgment is due against it as to Counts One through Four, and Nine and Ten. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties . . . unless the State has waived its [Eleventh Amendment] immunity."); *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83 (2000) (holding that Congress lacks the authority to abrogate state sovereign immunity for age discrimination claims). Moreover, as state officials, Dr. Ward and Crews are immune from suits for damages in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, to the extent Dr. Lawrence seeks money damages against them in their official capacity, summary

---

[3] Lawson State is operated under the authority of the Alabama Department of Postsecondary Education and the Alabama State Board of Education. Doc. 21 at 6.

judgment is due with respect to Counts One through Four. *See Ex parte Young*, 209 U.S. 123, 157-162 (1908).

As a result, the only surviving claims Dr. Lawrence has are the individual capacity claims against Dr. Ward and Crews for alleged violations of Section 1981 (Counts One through Four) and the Title VII claims against the college (Counts Five through Eight). In a nutshell, these counts allege claims for failure to promote (Count One), hostile work environment (Counts Three, Four, Six, and Seven), and retaliation (Counts Two, Five, and Eight). The court addresses these claims below, beginning with the failure to promote claim in Section A, the hostile work environment claims in Section B, and finally the retaliation claims in Section C.

## A. Failure to Promote Claim

In Count One, Dr. Lawrence asserts a claim under Section 1981 against Dr. Ward and Crews for failing to promote him to Dean of Career and Technical Education. Doc. 15 at 19-20. Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999); 42 U.S.C. § 1981. Where, as here, a plaintiff does not have direct evidence of discrimination,[4] he can prove his claims by showing a *prima facie* case

---

[4] To be clear, Dr. Lawrence does allege that he has direct evidence of discrimination—i.e. the alleged statement by Crews that "I'm not going to let Sam push this black girl around." *See*

of discrimination under the burden-shifting framework created in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330-31 (11th Cir. 1998).

This circumstantial method requires proof that the plaintiff was a "qualified member of a protected class and was subjected to an adverse employment action in contrast to similarly situated employees outside the protected class." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). "[T]o prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges," *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999), the comparators must be "similarly situated in all relevant respects," *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). This generally entails ascertaining "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia*, 171 F.3d at 1368.

In some circumstances, however, the "plaintiff's failure to produce a comparator does not necessarily doom her case," as long as she can present a "triable issue of fact" through "a convincing mosaic of circumstantial evidence that

---

doc. 26 at 34. Direct evidence is "evidence that, if believed, proves the existence of a fact without inference or presumption" and includes "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations omitted). Crews' statement is not such a "blatant" remark that it can prove discrimination without the need for an inference or presumption. *See id.*

would allow a jury to infer intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Dr. Ward and Crews raise two arguments in support of their motion. First, they contend that the failure to promote claim is time barred.[5] Doc. 21 at 16-17. Although Dr. Ward and Crews are correct that the promotion decision at issue occurred outside the two-year window, *see* doc. 21 at 16-18, the college waited until three weeks later to announce its decision. *See* doc. 27-2 at 1. As a result, unlike the actual decision itself, the announcement occurred within the statute of limitations. Consequently, because of the longstanding principle that a limitations period is equitably tolled "until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights," *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975), Dr. Lawrence's Section 1981 claim is not time barred.

Next, Dr. Ward and Crews contend that Dr. Lawrence cannot establish a *prima facie* case because he cannot show that Dr. Ward treated him less favorably than similarly situated employees. Doc. 21 at 17-21. At issue here is Dr. Lawrence's contention that Dr. Ward failed to select him for the Dean of Career and Technical Education position because of his race, and that Dr. Ward's decision to close the search and reorganize existing positions was a pretext for race

---

[5] The relevant statute of limitations period here is two years. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337–39 (11th Cir. 2008).

discrimination.  Doc. 26 at 31.  Dr. Lawrence concedes that he cannot point to any comparators Dr. Ward purportedly treated more favorably.[6]  Dr. Lawrence argues instead that he has presented a "circumstantial mosaic of discrimination" to allow his claim to proceed, i.e. (1) Crews' hiring of mostly African American employees (including her "cabinet"); (2) Crews' comment during a meeting that "I'm not going to let Sam push this black girl around;" and (3) that Crews and/or the college purportedly provided tuition reimbursement only to African American employees. Doc. 26 at 31-35.  There are several flaws with Dr. Lawrence's contentions— mainly that Dr. Lawrence concedes that he did not apply for the tuition assistance program, *see* doc. 22-1 at 44, and there is no evidence in the record to show that Crews played any role in the decision to cancel the search for the position at issue. In fact, Dr. Lawrence admits that Dr. Ward, rather than Crews, made this decision. Doc. 26 at 14, 19.   Therefore, the contentions regarding the "mosaic of discrimination," which consist of actions taken by Crews, are unavailing. Consequently, in light of Dr. Lawrence's failure to paint Dr. Ward with any discriminatory animus, and in the absence of any evidence that the cancellation of the search resulted in Dr. Lawrence being treated less favorably than similarly

---

[6] This decision is not surprising, given that the decision to close the search impacted all the thirty applicants—of whom sixteen were black, eleven were white, and three were other minorities.  Doc. 29-2 at 2-3.

situated employees, *see supra* at n.7, summary judgment is due to be granted on

Count One.[7]

## B. Hostile Work Environment Claims

In Counts Three, Four, Six, and Seven, Dr. Lawrence alleges that the

defendants subjected him to a hostile work environment because of his race and/or

gender in violation of Section 1981 and Title VII by: (1) excluding him from

accounting functions at the business office; (2) Crews' refusal to consider his input

on whether to outsource operations of the bookstores; (3) Crews' undermining of

his authority; (4) Crews' decision to reprimand him for brief absences; (5) Crews'

"negative racial comment;" and (6) Crews' decision to give him a lower

proficiency score. Doc. 26 at 36. None of these contentions, individually or

collectively, rises to the level necessary for a hostile work environment claim.

---

[7] The claim fails also because Dr. Ward articulated a legitimate, nondiscriminatory reason for the decision—i.e. to address the disruption caused by multiple employees jockeying for the position and to reorganize the duties to face the actual reality in place. Doc. 22-3 at 5. Dr. Lawrence contends that this reason is pretextual because Dr. Ward offered inconsistent reasons for hiring Sledge. Doc. 26 at 31-32. Dr. Ward's affidavit cites Sledge's "leadership and many years of experience as instructors and administrators in the Career Technical Education division at Lawson State," doc. 22-7 at 23; while Dr. Ward's announcement of the decision cites the intention to "align the [Sledge's] job title with [his] duties and responsibilities," 27-2 at 1. The court agrees with the Defendants, however, that these statements are entirely consistent. *See* doc. 28 at 5. Therefore, even assuming Dr. Lawrence could state a *prima facie* case, he has failed to rebut the Defendants' proffered reason. *See McDonnell Douglas Corp.,* 411 U.S. at 802.

As another contention of pretext, perhaps, Dr. Lawrence claims that the decision to remove the posting violated the Alabama Community College System's Uniform Guidelines, which state that unless "the person filling the vacancy already had been fulfilling the responsibilities of the position," Lawson State is required to post the position for at least 21 days. Doc. 26 at 19. The Uniform Guidelines state, however, that reorganization may be used "in cases of expansion or reassignment of duties." Doc. 27-4 at 62.

To establish a *prima facie* claim of harassment under Title VII or Section 1981, a plaintiff must prove that (1) she belongs to a protected group; (2) the employer subjected her to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable exists. *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006). The harassment must be both objectively severe or pervasive to a reasonable person and subjectively severe or pervasive to the plaintiff. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotations omitted).

Summary judgment is due on the hostile work environment claims because of Dr. Lawrence's failure to show that the alleged harassment was due to his protected status or that the alleged conduct rises to the level necessary for a hostile environment claim. First, there is no evidence that anyone ever directed any gender or race-based comments towards him. In fact, the only comment in the

record that arguably qualifies is Crews' remark that a white male employee "was not going to push this black girl around." Doc. 26 at 34. However, this comment, and the other examples Dr. Lawrence cites to support his claim—i.e. his contention that Crews and Dr. Ward favored African Americans and females in their selection decisions—are insufficient for a reasonable jury to conclude that Dr. Ward and/or Crews subjected Dr. Lawrence to a hostile work environment "based on" his gender or race. *See Cotton*, 434 F.3d at 1231. To prevail, Dr. Lawrence must do more than show evidence of potential bias by the alleged harasser. Rather, he must establish a causal nexus between the alleged harassment and the purportedly discriminatory conduct he is relying on to support the harassment claim. *See id.* at 1231-32. Dr. Lawrence has failed to do so here.

Moreover, Dr. Lawrence cannot show that the alleged conduct rises to an objectively severe or pervasive level. Although the alleged harassment was subjectively severe to Dr. Lawrence and resulted in the need for medical treatment,[8] *see* doc. 22-1 at 23-24, a reasonable person would not find this treatment so severe or pervasive as to unreasonably interfere with his job performance. For example, although Dr. Lawrence was dissatisfied with Crews' evaluation of his performance, he admitted that his overall score was above

---

[8] Dr. Lawrence sought treatment for acid reflux, heart palpitations, high blood pressure, and diabetes, high cholesterol, and sleep apnea. Doc. 24-2-1 at 24. However, as the Defendants correctly note in their reply, doc. 28 at 9-10, Dr. Lawrence could not say with certainty that his work environment caused the conditions. Doc. 24-2-1 at 24.

average.  *See* docs. 22-1 at 16; 22-6 at 72-76.  Moreover, there is no suggestion in the record that the evaluation impacted his pay or his job in general.  In general, Dr. Lawrence does not allege that Dr. Ward or Crews physically threatened him, and the daily humiliation he complains of—Crews' "undermining" of his authority—amounts to little more than ordinary squabbles in a typical workplace between an employee who believes he can do more than his supervisor will allow.[9] At best, Dr. Lawrence points to "sporadic and isolated" incidents of treatment that, perhaps unfair, are not objectively humiliating such that they would unreasonably interfere with the job performance of a reasonable person.  *See McCann*, 526 F.3d at 1378.

In sum, the evidence in the record falls well short of meeting the threshold for sustaining a hostile work environment claim in this circuit.  *See id.* at 1379 (affirming summary judgment on a racially hostile work environment claim where supervisor called the plaintiff "girl" and called two male black employees "boys" and a different supervisor used a racial slur on two occassions); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999) (affirming summary judgment

---

[9] Certain humiliating job actions can create a hostile work environment. *See Gowski v. Peake*, 682 F.3d 1299, 1314 (11th Cir. 2012) (finding a hostile work environment where employees were targeted with a campaign to force them to resign by limiting their hospital privileges and access, removed from committees and projects, prohibited from conducting research, reassigned to different wards, and given low proficiency ratings).  The record here, however, which consists of a contention that a supervisor failed to include the plaintiff in all decisions or engaged in conduct that undermined the plaintiff to his subordinates, does not qualify as objectively severe or pervasive harassment.

on a sexually hostile work environment claim where a male supervisor sexually harassed a female over a period of sixteen months—including rubbing his hip against hers and "constant[ly] following" her).  While Dr. Lawrence has a subjective right to be offended by the conduct he cites, Title VII is not a "general civility code for the American workplace."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  Accordingly, summary judgment is due to be granted on Counts Three, Four, Six, and Seven.

### C. Retaliation Claims

In Counts Two, Five, and Eight, Dr. Lawrence alleges that the Defendants retaliated against him in violation of Section 1981 and Title VII for filing an EEOC charge by: (1) removing him from an email chain about a grant project; (2) directing him to conduct an internal audit without first informing the affected employees to expect a call from Dr. Lawrence; and (3) giving him "the lowest evaluation score [he has] received in [his] career."  Doc. 15-2 at 7.  To establish a *prima facie* case of retaliation under either Title VII or Section 1981, including for a "retaliatory hostile work environment," the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that the adverse employment action would not have occurred but for the protected activity.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *see also Gowski v. Peake*, 682 F.3d 1299, 1314

(11th Cir. 2012); *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009).  For the reasons stated below, Dr. Lawrence cannot show a causal connection between his protected activity and the alleged retaliatory conduct.

Even assuming that Dr. Lawrence can prove that the alleged conduct he references constitutes an adverse employment action,[10] his retaliation claims fail because he cannot show a causal connection between his protected activity and the bulk of the alleged adverse conduct.  Generally, to prove causation, a plaintiff must show "that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action."  *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997).  Dr. Lawrence cannot make that showing here because his amended EEOC charge alleges retaliation that occurred primarily between "January of 2016 and April 6, 2016," doc. 15-2, which means it occurred *before* Defendants received notice of the EEOC charge.  Specifically, the evidence is unrebutted that Janice McGee, Lawson State's Human Resources Director, received the initial EEOC charge on April 28, 2016, due to the EEOC sending it initially to the wrong email address, doc. 22-9 at 3, and Dr. Ward and Crews also claim they received notice of the charge the same day.  Docs. 22-7 at 4; 22-8 at 5.  In absence of any evidence in the record to rebut these contentions, Dr.

---

[10] Only a "serious and material change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances" qualifies as an "adverse employment action."  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).  The alleged conduct pleaded in the Second Amended Complaint falls short of meeting this standard.

Lawrence has failed to prove that his EEOC charge was the cause of the alleged retaliation that occurred between January 2016 and April 2016. *See e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("[T]here is no indication that [the supervisor] even knew about the right-to-sue letter when she proposed transferring [the plaintiff].").

As for the post-April 2016 conduct, Dr. Lawrence pleads in his complaint that "from April of 2016 to September of 2016 . . . Crews also failed to provide [him] with the job title or authority that would correspond with the auditing duties, stating that such would be provided on September 30, 2016," that she required him to perform the duties without "the title which would convey the authority to complete these tasks," and that she finally gave him the "appropriate job title in September of 2016, [as she promised]." Doc. 15 at 18-19. Allegedly, the delay in providing the title constituted an adverse employment action because "it appeared that [he] was being set up to fail during that period, which is a vital period that will be reflected on his September 30, 2016 evaluation." *Id.* at 15. It seems Dr. Lawrence has abandoned this purported retaliatory claim in light of his failure to raise it in opposition to the motion for summary judgment. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims.") (quoting *Cole v. U.S.*

*Atty. Gen.*, 712 F.3d 517, 530 (11th Cir. 2013)). More significantly, the claim fails because it falls far short of rising to an adverse action and is based on speculation about being set up to fail for his September 30, 2016 evaluation. Purportedly bad evaluations which do not result in any loss in pay or negative change in status are not adverse actions. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241 (11th Cir. 2001) ("[C]riticisms of an employee's job performance—written or oral—that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit.").

Moreover, Dr. Lawrence does not claim that he received a bad evaluation or that Crews' purported "set up" resulted in any tangible consequence. To the contrary, although the complaint and the record do not show why Crews told Dr. Lawrence that he had to wait until September to get the title, by Dr. Lawrence's own pleading, he received the title on the date promised. Doc. 15 at 18-19. Therefore, in the absence of any allegation that the delay deprived him of any pay increase, there is no adverse action. *See Davis*, 245 F.3d at 1241.

For all these reasons, the retaliation claims also fail.

## CONCLUSION

Consistent with this opinion, the Defendants Motion for Summary Judgment, doc. 20, is due to be granted. A separate order will be entered.

**DONE** the 6th day of March, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE